UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

ANTHONY R. BOYKEN
        Plaintiff
  vs
KAREN BEASLEY, et.al.,
        Defendants

MOTION FOR CLASS CERTIFICATION/
1:08-cv-01064-HAB-JAG
PLAINTIFFS MOTION FOR TRO

Plaintiff, Pro Se, respectfully request this Honorable Court to make this case a class action lawsuit as the Policies and Procedures implemented by all named defendants effects all Past, Present and future inmates within the IDOC. Plaintiff also requests this Court to issue a TRO immediately to stop Pontiac Prison officials from taking the 2.00.out of inmates trust funds prior to an inmate getting non-emergency medical and dental services AT OFFICES OF FACILITIES OTHER THAN DEPARTMENTAL FACILITIES. This Motion is Made Pursuant to Rules 23 and 65 of the F.R.C.P.

### POINTS AND AUTHORITIES

The Supporting memorandum of law submitted requests this Honorable court order defendants to appear and show cause why a TRO should not issue. Pursuant to Rule 65 enjoining defendants, and future defendants, their successors in office, agents, employees and all other persons acting in concert and Participating from:

1) Taking or charging inmates 2.00 for services the IDOC are obligated to treat medically including dental on the grounds of any IDOC office or facility as stipulated in Section 415.30 subsection (9) which states:

1

Committed Persons who require non-emergency medical or dental services AT OFFICES OR FACILITIES OTHER THAN DEPARTMENT FACILITIES shall authorize the department to deduct a 2.00 co-payment from present or future funds in his or her trust fund prior to each visit. Non-emergency services are scheduled by a Department Physician.

1. The Co-Payment shall be paid from the committed persons trust fund <u>when the services are delivered</u>.

In the instant case defendants allege that Plaintiff refused to "sign a P-96 sick (sic) call and he refused" See grievance #44387. Defendants Warden Eddie Jones, Roser E. Walker, Melody J. Ford of the Administrative Board all signed off on the illegality of Plaintiff and all other inmates past, present and future unless the court grants the TRO to stop this stealing of inmates money. The 2.00 is for services provided at "offices and facilities other than the Department, i.e. IDOC. Also, attached is Plaintiffs Trust fund statement for the month of November 2006, there is a 2.00 charge dated November 15, 2006, why was it Plaintiff did not recieve treatment until December 8, 2006? The fact still remains Plaintiff complained of pain in his ear to AWO Mathy on 11-14-06 after submitting prior P-96 per the Illinois Administrative Code Chapter § 415. Plaintiff was mandated to see an ENT, a service provided by an office of facility other than the IDOC. Pontiac and other facilities and offices are literally robbing inmates by taking 2.00 and not providing the required medical and dental services required by law. The Supreme Court in Lewis v. Casey 518 U.S. 343 (1996) speaks to why a TRO should be granted, as well as why this action should be certified class action and counsel appointed.

2

## CERTIFICATE of SERVICE

I certify under penalty of perjury I mailed a trust fund statement dated 3-27-08 showing transactions made during the month of November 2006 and Page 4 of 15 and 5 of 15 of 20 ILLINOIS CODE CH:415 by mailing to Law Library at Pontiac CC this 27th day of March 2008

Q. Boyk

20 ILLINOIS ADMINISTRATIVE CODE                    CH. I, §415
                                                   SUBCHAPTER d

stated in this Part to another person or persons or designate another person or persons to perform the duties specified.

b)  No other individual may routinely perform duties whenever a rule in this Part specifically states the Director, Chief Administrative Officer, or Agency Medical Director shall personally perform the duties. However, the Director, Chief Administrative Officer, or Agency Medical Director may designate another person or persons to perform the duties during periods of his or her temporary absence or in an emergency.

(Source:  Amended at 19 Ill. Reg. 15428, effective November 15, 1995 )

Section 415.20  Definitions

a)  "Agency Medical Director" means the Medical Director of the Department of Corrections.

b)  "Chief Administrative Officer" means the highest ranking official of a correctional facility.

c)  "Communicable disease" means a disease caused by an organism which is transmitted through airborne means or casual contact, or through blood or bodily secretion contact from one human being to another.

d)  "Department" means the Department of Corrections.

e)  "Department physician or dentist" means any physician or dentist who provides services for the Department.

f)  "Director" means the Director of the Department of Corrections.

g)  "Gravely disabled" means a condition in which a committed person, as a result of a mental illness or mental disorder:

   1)  Is in danger of serious physical harm resulting from the person's failure to provide for his or her essential human needs of health or safety; or

   2)  Manifests serious deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or

2 of 15

---

20 ILLINOIS ADMINISTRATIVE CODE                    CH. I, §415
                                                   SUBCHAPTER d

volitional control over the person's actions which is likely to seriously jeopardize his or her health or safety.

h)  "Likelihood of serious harm" means:

   1)  A substantial risk that physical harm will be inflicted by a committed person upon his or her own person as evidenced by, among other things, threats or attempts to commit suicide or inflict physical harm on one's self; or

   2)  A substantial risk that physical harm will be inflicted by committed person upon another as evidenced by, among other things, behavior which has caused such harm or which places another person or persons in reasonable fear of sustaining such harm; or

   3)  A substantial risk that physical harm will be inflicted by a committed person upon the property of others as evidenced by, among other things, behavior which has caused substantial loss or damage to the property of others.

i)  "Mental health professional" means a psychiatrist, physician, psychiatric nurse, clinically trained psychologist, or an individual who has a master's degree in social work and clinical training.

j)  "Physician" means an individual who is licensed by the State of Illinois to practice medicine in all of its branches.

k)  "Specialized mental health setting" means a Department of Corrections facility or unit which specializes in mental health care.

(Source:  Amended at 19 Ill. Reg. 15428, effective November 15, 1995)

Section 415.30  Medical and Dental Examinations and Treatment

a)  Within seven working days after admission to a reception and classification center, each committed person shall be given a physical examination by a physician or by a nurse practitioner under the direct supervision of a physician or by a physician's assistant under the direct supervision of a physician. Each

3 of 15

20 ILLINOIS ADMINISTRATIVE CODE                    CH. I, §415
                                                   SUBCHAPTER d

committed person shall be immunized as prescribed by the physician.

b) Each committed person shall be examined by a dentist within 10 working days after admission to a reception and classification center. The dentist shall chart the oral cavity and classify dental health.

c) Emergency treatment shall be available to committed persons 24 hours a day.

d) A health care unit or area shall be established at each correctional facility within the Adult and Juvenile Divisions. Committed persons shall be admitted to the health care unit or area as determined by health care personnel.

e) Committed persons shall be informed of the institutional procedures for obtaining medical, dental, or mental health services.

f) Persons committed to the Adult and Juvenile Division facilities shall be provided medical and dental treatment, with the consent of the parent or guardian where applicable, as prescribed by a Department physician or dentist.

g) Committed persons who require non-emergency medical or dental services at offices or facilities other than Department facilities shall authorize the Department to deduct a $2.00 co-pay from present or future funds in his or her trust fund account prior to each visit. Non-emergency services are scheduled services determined necessary by a Department physician.

   1) The co-payment shall be paid from the committed person's trust fund when the services are delivered.

   2) Committed persons who are without funds at the time services are delivered shall not be denied medical or dental services. The committed person's trust fund account shall be restricted for the amount of co-payment and shall be paid upon receipt of future funds.

   3) A committed person who is found to be indigent shall be exempt from the co-payment. A committed person shall be

---

20 ILLINOIS ADMINISTRATIVE CODE                    CH. I, §415
                                                   SUBCHAPTER d

considered indigent if during the entire term of his or her incarceration the committed person is without funds to pay the $2.00 co-payment.

h) A committed person who has or is suspected of having a communicable disease may be isolated from other committed persons. This determination shall be made by a physician as deemed medically necessary.

i) In case of critical illness or major surgery, the Chief Administrative Officer shall attempt to notify the person designated by the committed person to be contacted in case of an emergency and, where applicable, the parent or guardian.

j) The decision to continue or terminate a pregnancy is a medical determination which shall be made by the committed person in consultation with her physician.

   1) Committed persons contemplating an abortion shall be provided with information and counseling concerning the nature of, the consequences of, and any risks associated with the procedure and available alternatives.

   2) Committed persons shall be granted a furlough for the purpose of obtaining an abortion. Committed persons shall be permitted to accept funds for an abortion from local community charities or other sources.

k) A record of all medical and dental examinations, findings, and treatment shall be maintained.

(Source: Amended at 21 Ill. Reg. 5916, effective May 1, 1997)

Section 415.40 Mental Health Services

Persons committed to the Department shall have access to mental health services as determined by a mental health professional.

Section 415.50 **Mental Health Examinations and Treatment for Guilty but Mentally Ill**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Date: | 3/27/2008 | | | **Pontiac Correctional Center** | | | Page 1 |
| Time: | 8:30am | | | **Trust Fund** | | | |
| d_list_inmate_trans_statement_composite | | | | Inmate Transaction Statement | | | |

REPORT CRITERIA - Date: 11/01/2006 thru 11/30/2006;   Inmate: R55358;   Active Status Only ? : No;   Print Restrictions ? : Yes;   Transaction Type: All Transaction Types;   Print Furloughs / Restitutions ? : Yes;   Include Inmate Totals ? : Yes;   Print Balance Errors Only ? : No

**Inmate: R55358 Boykin, Anthony**                **Housing Unit: PON-N -07-19**

| Date | Source | Transaction Type | Batch | Reference # | Description | Amount | Balance |
|---|---|---|---|---|---|---|---|
| | | | | | Beginning Balance: | | 0.00 |
| 11/06/06 | Mail Room | 01 MO/Checks (Not Held) | 310262 | 167022 | Nevada DOC, Personal Property | 1,507.31 | 1,507.31 |
| 11/15/06 | Disbursements | 84 Library | 319320 | Chk #61084 | 488187, DOC: Library Copies, Inv. Date: 11/01/2006 | -.35 | 1,506.96 |
| 11/15/06 | Disbursements | 84 Library | 319320 | Chk #61084 | 487782, DOC: Library Copies, Inv. Date: 10/27/2006 | -3.25 | 1,503.71 |
| 11/15/06 | Disbursements | 84 Library | 319320 | Chk #61084 | 487205, DOC: Library Copies, Inv. Date: 10/24/2006 | -.75 | 1,502.96 |
| 11/15/06 | Disbursements | 84 Library | 319320 | Chk #61084 | 488945, DOC: Library Copies, Inv. Date: 11/13/2006 | -.30 | 1,502.66 |
| 11/15/06 | Disbursements | 84 Library | 319320 | Chk #61084 | 488839, DOC: Library Copies, Inv. Date: 11/09/2006 | -2.90 | 1,499.76 |
| 11/15/06 | Disbursements | 84 Library | 319320 | Chk #61084 | 484765, DOC: Library Copies, Inv. Date: 10/02/2006 | -.50 | 1,499.26 |
| 11/15/06 | Disbursements | 84 Library | 319320 | Chk #61084 | 487424, DOC: Library Copies, Inv. Date: 10/25/2006 | -.45 | 1,498.81 |
| 11/15/06 | Disbursements | 90 Medical Co-Pay | 319320 | Chk #61085 | 486531, DOC: 523 Fund Reimburs, Inv. Date: 10/17/2006 | -2.00 | 1,496.81 |
| 11/15/06 | Disbursements | 80 Postage | 319320 | Chk #61086 | 488759, Pitney Bowes Bank, Inc, Inv. Date: 11/08/2006 | -.78 | 1,496.03 |
| 11/15/06 | Disbursements | 81 Legal Postage | 319320 | Chk #61086 | 489076, Pitney Bowes Bank, Inc, Inv. Date: 11/13/2006 | -.78 | 1,495.25 |
| 11/15/06 | Disbursements | 81 Legal Postage | 319320 | Chk #61086 | 488143, Pitney Bowes Bank, Inc, Inv. Date: 11/01/2006 | -.39 | 1,494.86 |
| 11/15/06 | Disbursements | 81 Legal Postage | 319320 | Chk #61086 | 484310, Pitney Bowes Bank, Inc, Inv. Date: 09/26/2006 | -.63 | 1,494.23 |
| 11/15/06 | Disbursements | 81 Legal Postage | 319320 | Chk #61086 | 487070, Pitney Bowes Bank, Inc, Inv. Date: 10/23/2006 | -.39 | 1,493.84 |
| 11/15/06 | Disbursements | 80 Postage | 319320 | Chk #61086 | 489353, Pitney Bowes Bank, Inc, Inv. Date: 11/14/2006 | -4.64 | 1,489.20 |
| 11/15/06 | Disbursements | 81 Legal Postage | 319320 | Chk #61086 | 489041, Pitney Bowes Bank, Inc, Inv. Date: 11/13/2006 | -.96 | 1,488.24 |
| 11/15/06 | Disbursements | 80 Postage | 319320 | Chk #61086 | 489354, Pitney Bowes Bank, Inc, Inv. Date: 11/14/2006 | -5.36 | 1,482.88 |
| 11/15/06 | Disbursements | 81 Legal Postage | 319320 | Chk #61086 | 484311, Pitney Bowes Bank, Inc, Inv. Date: 09/26/2006 | -.39 | 1,482.49 |
| 11/15/06 | Disbursements | 80 Postage | 319320 | Chk #61086 | 488878, Pitney Bowes Bank, Inc, Inv. Date: 11/09/2006 | -4.64 | 1,477.85 |
| 11/15/06 | Disbursements | 81 Legal Postage | 319320 | Chk #61086 | 484312, Pitney Bowes Bank, Inc, Inv. Date: 09/26/2006 | -.63 | 1,477.22 |
| 11/15/06 | Disbursements | 81 Legal Postage | 319320 | Chk #61086 | 487460, Pitney Bowes Bank, Inc, Inv. Date: 10/25/2006 | -1.41 | 1,475.81 |
| 11/15/06 | Disbursements | 81 Legal Postage | 319320 | Chk #61086 | 486981, Pitney Bowes Bank, Inc, Inv. Date: 10/20/2006 | -1.17 | 1,474.64 |
| 11/29/06 | Point of Sale | 60 Commissary | 333705 | 230318 | Commissary | -20.18 | 1,454.46 |

|  |  |
|---|---|
| **Total Inmate Funds:** | 9.09 |
| **Less Funds Held For Orders:** | .00 |
| **Less Funds Restricted:** | 1.25 |
| **Funds Available:** | 7.84 |
| **Total Furloughs:** | .00 |